UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

EUGENE HOLLEY

       Petitioner,              <u>MEMORANDUM AND ORDER</u>

  -against-               Civil Action No.
                               CV-03-1852(DGT)

W. PHILLIPS, Superintendent,
Greenhaven Correctional Facility

       Respondent.

--------------------------------X

Trager, J:

    Eugene Holley has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied in all respects.


**Background**

**(1)**

**Facts Leading to Holley's Arrest and Conviction**

    The crime for which Holley was convicted involved the shooting and killing of an individual named Kevin Samms on June 7, 1995, in the Red Hook neighborhood of Brooklyn, NY. Holley denies he was the shooter, but according to the State of New York, Holley rode his bicycle into the courtyard of a housing project where Samms and several others were located, said to Samms, "You're down with Tarmel," and then shot Samms twice from at least two feet away. Shortly after the first two shots, while

a bystander attempted to remove Samms from the area, Holley got off his bicycle and shot Samms again.  Samms died from his gunshot injuries.

Later that night, according to one witness, Holley admitted to being the shooter and said that he himself was shot by Samms's brother during the attack.  Holley was arrested and placed in a lineup.  Two witnesses identified him as the shooter.

The state charged Holley with two counts of murder in the second degree – one count alleging that Holley acted with intent; the other, depraved indifference – and one count each of attempted murder in the second degree, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and reckless endangerment in the first degree.

In September 1996, a jury convicted Holley of murder in the second degree on the depraved indifference count, criminal possession of a weapon in the second degree, and reckless endangerment in the first degree.  The jury acquitted Holley of the intentional murder count.

Petitioner was sentenced on October 9, 1996, to concurrent, indeterminate prison terms of twenty-five years to life for murder, three to six years for weapon possession, two to four years for reckless endangerment, and one year for a violation of probation.

### Procedural History

Holley, by counsel, appealed his conviction to the New York Supreme Court, Appellate Division, Second Department ("Appellate Division"), arguing that the state had failed to prove his guilt beyond a reasonable doubt and that the verdict was against the weight of the evidence. Specifically, Holley claimed that the identification evidence was insufficient because two eyewitnesses did not identify him and those witnesses who did were not credible.

On August 20, 2001, the Appellate Division affirmed Holley's conviction. People v. Holley, 286 A.D.2d 445, 729 N.Y.S.2d 898 (2d Dep't 2001). The Appellate Division held that Holley had failed to preserve his legal insufficiency claim for review and denied his appeal on the merits. Leave to appeal to the New York Court of Appeals was denied on December 28, 2001. People v. Holley, 97 N.Y.2d 683, 764 N.E.2d 402, 738 N.Y.S.2d 298 (2001).

Holley filed his first habeas petition on April 14, 2003, raising three claims: (1) the state failed to present exculpatory evidence to the grand jury; (2) his right to be present was violated at trial due to his absence from a hearing regarding the intimidation of a witness; and (3) the state presented inadmissible ballistics evidence. Holley had not raised any of these claims on direct appeal. The state moved to dismiss the

petition on the grounds that it was untimely filed because it was received by the court more than one year after Holley's conviction became final.

While the state's motion to dismiss was pending, Holley moved to hold his habeas petition in abeyance so he could exhaust his state remedies. On July 9, 2003, Holley's case was closed with leave to reopen after Holley exhausted his state court remedies.

On April 19, 2003, petitioner moved in state court to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10, raising the three grounds he raised in his original habeas petition and the additional ground that he was denied counsel during his lineup. On July 13, 2003, the Supreme Court, Kings County, denied his motion. First, the court held that his claims regarding (1) his right to be present during a hearing on witness intimidation, (2) the improper admission of ballistics evidence, and (3) his right to counsel at his lineup were procedurally barred pursuant to New York Criminal Procedure Law § 440.10(2)(c) on the grounds that he could have but did not raise these claims on direct appeal. In addition, with respect to Holley's right to counsel claim, the court noted that the lineup occurred prior to a formal charge and there is no right under federal or New York law to counsel at a pre-indictment lineup. The court also held that petitioner had provided

insufficient sworn allegations of fact regarding the claim that his attorney failed to present exculpatory testimony in the grand jury and that the claim was meritless. Leave to appeal from this decision was denied on January 9, 2004.

Soon thereafter, on February 9, 2004, Holley's habeas petition was reopened upon his request. On November 15, 2004, the state's motion to dismiss Holley's petition on the grounds that it was time-barred was denied without prejudice, and the state was directed to address the merits of Holley's claims.

On December 13, 2004, Holley moved once again to hold his petition in abeyance in order to exhaust additional state remedies. His request was granted on January 6, 2005.

On May 23, 2006, Holley moved in state court for a writ of error coram nobis, claiming that his appellate counsel was ineffective for: (1) failing to challenge the strength of the evidence of depraved indifference murder versus intentional murder; and (2) failing to argue that Holley's trial counsel was ineffective for not preserving that issue for appellate review. Holley also claimed that the state failed to prove his guilt beyond a reasonable doubt. The Appellate Division denied Holley's application on March 7, 2006, holding that he had failed to demonstrate that he had received ineffective assistance of appellate counsel. <u>People v. Holley</u>, 27 A.D.3d 484, 809 N.Y.S.2d 915 (2d Dep't 2006). Leave to appeal this decision was denied on

May 31, 2006.  People v. Holley, 6 N.Y.3d 895, 850 N.E.2d 677, 817 N.Y.S.2d 630 (2006).

On June 29, 2005, Holley filed a second habeas petition, raising the following claims: (1) the evidence was legally insufficient to establish that he acted with depraved indifference; (2) appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on the ground that trial counsel had failed to preserve the legal sufficiency claim; (3) the state failed to present exculpatory evidence to the grand jury; (4) his right to be present was violated by his absence from a hearing regarding witness intimidation; (5) the state presented inadmissible ballistics evidence at trial; and (6) the line-ups were conducted in violation of his right to counsel.

## Discussion

### (1)

### Timeliness of Petition

The state argues first that Holley's habeas petition should be dismissed because it was filed too late.  A petition for habeas corpus must be filed within one year from the date on which the defendant's conviction became final.  28 U.S.C. § 2244(d)(1)(A).  When certiorari to the United States Supreme Court is not sought, convictions are deemed final on the date on

which the time to seek certiorari expires – here, ninety days after denial of an application for leave to appeal to the New York Court of Appeals. Holley's application for leave to appeal to the New York Court of Appeals was denied on December 28, 2001, and therefore his conviction became final ninety days later on March 28, 2002. Thus, Holley had until March 28, 2003, to file his petition. The petition was not dated, signed, or notarized; it was received on April 14, 2003, seventeen days after the statute of limitations had expired. It is unclear when petitioner gave the petition to prison officials.

Generally, when a habeas petitioner is in prison, as is Holley, his petition is deemed filed when he gives it to prison officials, not when it is received by the district court. <u>See</u> <u>Noble v. Kelly</u>, 246 F.3d 93, 97 (2d Cir. 2001); <u>see also</u> <u>Walker v. Jastremski</u>, 430 F.3d 560 (2d Cir. 2005). Moreover, in the absence of contrary evidence, courts generally presume that habeas petitions were given to prison officials on the date the petitions were signed. <u>See</u>, <u>e.g.</u>, <u>Porter v. Greiner</u>, No. 00-6047, 2005 U.S. Dist. LEXIS 31828 (E.D.N.Y. Nov. 18, 2005); <u>Torres v. Irvin</u>, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998). In this case, Holley's petition was neither signed nor dated, and neither party points to any evidence otherwise establishing the date on which the petition was given to prison officials. On such an ambiguous record, and given the leniency applied to the

7

filing requirements of pro se litigants, see Triestman v. Fed.
Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006), it cannot be
reliably determined whether Holley gave his petition to prison
officials after the deadline.  Therefore, notwithstanding that
Holley's petition was received seventeen days late, it is not
dismissed as untimely.  cf Noble, 246 F.3d at 97-98 (2d Cir.
2001) (holding that a district court properly ruled that a habeas
petition was timely even though it was not received by the
district court until nearly three months after the deadline).
Nevertheless, as discussed below, the timeliness of the filing is
irrelevant because Holley's petition is denied for other reasons.


**(2)**

**Standard of Review**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA"), a petition for a
writ of habeas corpus may be granted only if the state court's
adjudication of the prisoner's claim:

> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

Under this standard, a federal court may only grant a habeas petition when the state court's application of federal law is, in addition to being incorrect, unreasonable.  <u>Clark v. Stinson</u>, 214 F.3d 315, 321 (2d Cir. 2000) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 409 (2000).

**(3)**

### Sufficiency of the Evidence to Establish Depraved Indifference Murder

The state charged Holley with two separate counts of murder in the second degree - one alleging that Holley acted with intent; the other, depraved indifference.  According to Holley, the focus of the state's evidence was to establish intentional murder, but the jury acquitted Holley of this charge.  The state did not, Holley claims, present sufficient evidence support his conviction for depraved indifference murder.

This claim is procedurally barred.  Section 470.05 of the New York Criminal Procedure Law bars review on appeal of issues that were not raised in the trial court.  Moreover, a writ of habeas corpus cannot be granted unless the petitioner has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A); <u>Dorsey v. Kelly</u>, 112 F.3d 50, 52 (2d Cir. N.Y. 1997).

> To satisfy the exhaustion requirement with respect to a claim, a defendant must fairly present[] that claim to the state courts so that the court has a fair opportunity to consider the . . . claim and to correct that asserted constitutional defect in respondent's conviction.  A petitioner has

9

> fairly presented his claim only if he has
> informed the state court of both the factual
> and the legal premises of the claim he
> asserts in federal court.  To have done so,
> the petitioner must have set forth in state
> court all of the essential factual
> allegations asserted in his federal petition;
> if material factual allegations were omitted,
> the state court has not had a fair
> opportunity to rule on the claim.

Id. (citing Picard v. Connor, 404 U.S. 270, 275 (1971)) (other

quotations and citations omitted).  Holley did not raise this

claim at trial or on direct appeal.  He addressed this issue for

the first time in his petition for a writ of error coram nobis,

which was rejected by the Appellate Division.  There, he used the

standard method of pursuing these kinds of forfeited claims by

arguing that his appellate counsel was ineffective for failing to

raise an ineffective assistance of trial counsel claim based on

trial counsel's failure to argue that the evidence of depraved

indifference murder was insufficient – a claim he has made again

in this habeas petition and which is dealt with below.  But this

particular claim, in which Holley challenges the sufficiency of

the evidence without coupling it with an ineffective assistance

claim, has not been raised until now, and thus, it is

procedurally barred from habeas review.  See Washington v. James,

996 F.2d 1442, 1447 (2d Cir. 1993).  Nevertheless, even were this

claim not procedurally barred, it would fail on the merits

because, as discussed below in the discussion of Holley's

ineffective assistance claim, the evidence at trial was sufficient to support his conviction for depraved indifference murder.

## (4)

### Ineffective Assistance

In a claim related to his sufficiency of the evidence claim, Holley argues that his <u>appellate</u> counsel ineffectively assisted him by not arguing on appeal that Holley's <u>trial</u> counsel was ineffective for failing to move to dismiss the depraved indifference count. Holley first made this claim in his petition for a writ of error coram nobis, and the state court rejected it.

The Constitution guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; <u>see also</u> <u>Strickland v. Washington</u>, 446 U.S. 668 (1984).

> To prove ineffective assistance of counsel, a defendant must demonstrate that (1) his attorney's performance 'fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' Courts need not 'address both components of the inquiry if the defendant makes an insufficient showing on one' and need not consider the first . . . component before turning to the second.

<u>O'Connor v. Kuhlman</u>, 2008 U.S. App. LEXIS 5310 (2d Cir. March 13, 2008) (citing and quoting <u>Strickland</u>, 446 U.S. at 688, 694, 697).

Thus, the viability of Holley's ineffective assistance of
appellate counsel claim depends on whether the evidence at trial
was sufficient to establish his guilt for depraved indifference
murder.  In other words, if the evidence was sufficient to
support his conviction, then no prejudice could have resulted
from his trial counsel's failure to preserve the issue for
appeal, or from his appellate counsel's failure to argue that his
trial counsel was ineffective for not doing so.

Evidence is sufficient to support a guilty verdict if, when
viewing the evidence in the light most favorable to the
prosecution, a rational jury "could have found the essential
elements of the crime beyond a reasonable doubt."  See Maldonado
v. Scully, 86 F.3d 32, 35 (2d Cir. N.Y. 1996) (quoting Jackson v.
Virginia, 443 U.S. at 319 (1979)).  Holley is challenging his
conviction for depraved indifference murder, an offense defined
by New York Penal Law as follows: "Under circumstances evincing a
depraved indifference to human life, he recklessly engages in
conduct which creates a grave risk of death to another person,
and thereby causes the death of another person."  N.Y. Penal Law
§ 125.25(2).

The general thrust of Holley's claim is that the evidence,
which in his opinion sought to establish intent, was insufficient
to prove that he acted with depraved indifference.  New York law
in this area has changed significantly since Holley's conviction

12

became final on March 28, 2002, and a brief summary of the law as it was and as it is will be helpful.

From 1983, when the New York Court of Appeals decided People v. Register, 60 N.Y.2d 270, 457 N.E.2d 704, 469 N.Y.S.2d 599 (1983), until at least July 9, 2002, when it decided People v. Sanchez, 98 N.Y.2d 373, 777 N.E.2d 204, 748 N.Y.S.2d 312 (2002), the law was "static." Policano v. Herbert, 7 N.Y.3d 588, 595, 859 N.E.2d 484, 489, 825 N.Y.S.2d 678 (2006) (answering certified questions from the Second Circuit Court of Appeals, 453 F.3d 75 (2006), regarding the state of New York's law on depraved indifference murder). In Register, the New York Court of Appeals held that

> [R]ecklessness, pure and simple, is the mens rea for depraved indifference murder, which is "distinguishable from manslaughter[] not by the mental element involved but by the objective circumstances in which the act occurs"; these circumstances define the degree of risk created by the defendant. As a result, "the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct.

Id. at 597 (citing and quoting Register, 60 N.Y.2d at 276). In Sanchez, the New York Court of Appeals reaffirmed Register. Policano, 7 N.Y.3d at 595. Specifically, in Sanchez, two individuals – Sanchez and the victim – argued at a party, after which Sanchez shot the victim in the chest from twelve to

13

eighteen inches away.  <u>Sanchez</u>, 98 N.Y.2d at 375-76.  Sanchez was

acquitted of intentional murder but convicted of depraved

indifference murder.  On appeal, Sanchez argued, like Holley does

here, that the evidence could have established only intent and

was thus insufficient to support a conviction on the depraved

indifference count.  <u>Id.</u> at 376-77.  The court disagreed, holding

that,

> [A]ccepting jury's determination that the
> killing of [the victim] was not intentional,
> . . . defendant's shooting into the victim's
> torso at point-blank range presented such a
> transcendent risk of causing his death that
> it readily meets the level of manifested
> depravity needed to establish murder under
> Penal Law § 125.25(2).  Here, once it
> rejected intentional murder, the jury . . .
> could reasonably conclude that defendant's
> conduct was so manifestly destined to result
> in [the victim's] death as to deserve the
> same societal condemnation as purposeful
> homicide.

<u>Id.</u> at 378.  The Court also stated: "That [Sanchez's] conduct

involved such a high risk of death that it could also lead to the

conclusion that it was intentional supports rather than detracts

from characterizing it as evincing depraved indifference to human

life . . . . [P]urposeful homicide itself is the ultimate

manifestation of indifference to the value of human life."  <u>Id.</u>

at 384.  <u>Sanchez</u> was decided on July 9, 2002, three months after

Holley's conviction became final.  The New York Court of Appeals

has since noted that,

> Sanchez epitomized our depraved indifference
> jurisprudence under the Register regime, the
> hallmarks of which – at least with respect to
> fatal one-on-one shootings or knifings – were
> twofold.  First, even though such an attack
> by its very nature presents compelling
> circumstantial evidence of intent to cause
> death, we considered the question of the
> defendant's state of mind to be a classic
> matter for the jury. . . . Second, the
> factual setting in which the risk-creating
> conduct must occur, viewed objectively –
> Register's standard for determining whether
> there are circumstances evincing a depraved
> indifference to human life – was fulfilled if
> a defendant's actions created an almost
> certain risk of death by, for example,
> shooting the victim in the head multiple
> times at close range.  As we expressed this
> concept in Sanchez, where the defendant's
> actions created 'a transcendent risk' of
> causing death, 'the level of manifested
> depravity needed to establish [depraved
> indifference murder]' was 'readily' met.

Policano, 7 N.Y.3d at 599-600.  In other words, under Register

and Sanchez, which reflect the state of the law at the time

Holley's conviction became final, "the very facts establishing a

risk of death approaching certainty and thus presenting

compelling circumstantial evidence of intent – for example, a

point-blank shooting of the victim in the head – likewise

demonstrated depraved indifference."  Id. at 601.

Although irrelevant to Holley's petition, it bears noting

that in a series of cases that followed Sanchez, New York law on

depraved indifference murder changed, and in People v. Feingold,

7 N.Y.3d 288, 852 N.E.2d 1163, 819 N.Y.S.2d 691 (2006), the New

York Court of Appeals expressly overruled <u>Register</u> and <u>Sanchez</u>.
<u>Policano</u>, 7 N.Y.3d at 595. In sum: "It is now clear that under
New York law a one-on-one shooting or knifing (or similar
killing) can almost never qualify as depraved indifference
murder." <u>Id.</u> at 601 (internal citations and quotations omitted).
Under the current state of New York law, Holley's claim that the
evidence was insufficient to establish depraved indifference
would present a more difficult question. The New York Court of
Appeals has held, however, that the post-<u>Sanchez</u> change in the
law of depraved indifference murder may not be applied
retroactively. <u>Id.</u> at 602-05. In other words, Holley may not
challenge his conviction collaterally based on this change in the
law that occurred after his conviction became final. The law
that must be applied to Holley's petition is the law as it was
when Holley's conviction became final on March 28, 2002, which is
to say, the law under <u>Register</u> and <u>Sanchez</u>. <u>Id.</u>

The evidence at Holley's trial demonstrated that several
people in addition to the victim were present in the courtyard
where the shooting occurred. One bystander in particular was
seated close enough to the victim to have been having a
conversation with him when he was shot. Moreover, the evidence
established that the shots were fired from a distance of two or
more feet. These facts mirror in all material respects those
from <u>Sanchez</u>. <u>Sanchez</u> held that "defendant's shooting into the

16

victim's torso at point-blank range presented such a transcendent risk of causing his death that it readily meets the level of manifested depravity needed to establish murder under Penal Law § 125.25(2)."  Sanchez, 98 N.Y.2d at 378.  Likewise, based on the circumstances surrounding Holley's shooting of Samms, it was reasonable for the jury to have concluded as it did that Holley acted with depraved indifference.  Thus, because the evidence was sufficient to establish depraved indifference murder, neither of Holley's lawyers were ineffective for not pursuing this line of argument.

### (5)

### The State's Failure to Present Exculpatory Evidence to the Grand Jury

Holley's next claim is that he deserves habeas relief because the state failed to call to testify before the grand jury Pamela Snipe, who Holley claims would have exculpated him by testifying that she saw someone else commit the shooting.  It bears noting that the state did disclose to the defense prior to trial the police report detailing Snipe's statement.  In any event, claims like this one that allege defects in a state grand jury proceeding are not cognizable on habeas review.  Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); see also Warren v. Ercole, No. 07-3175, 2007 U.S. Dist. LEXIS 86828 (E.D.N.Y. Nov. 27, 2007) (holding that a petitioner's claim that the state failed to

present exculpatory evidence to the state grand jury was not cognizable on habeas review).

## (4)

### The Procedural Bar to Holley's Remaining Claims

Holley's remaining claims – that (1) he was improperly excluded from a hearing regarding the intimidation of a witness, (2) the trial court improperly admitted certain ballistics evidence, and (3) he was deprived of his right to counsel during a lineup – were rejected by the state court on adequate and independent state grounds.  Thus, they are barred from habeas review.  "Ordinarily, a federal habeas court may not reach the merits if the state court's rejection of a federal claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Clark v. Perez, 510 F.3d 382, 390 (2d Cir. 2008) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  Holley advanced these same three claims in his 440 motion, and the state court rejected them because Holley could have but did not raise them on direct appeal.  This was an adequate and independent state ground, and thus federal habeas review is barred with respect to these claims.  See Levine v. Commissioner of Correctional Servs., 44 F.3d 121, 126 (2d Cir. 1995) (holding that a habeas petitioner's ineffective assistance claim was procedurally barred from review because the state court

denied his 440 motion on the adequate and independent state grounds that he failed to raise his ineffective assistance claim on direct appeal), <u>superceded on other grounds by statute as stated in</u> <u>Penick v. Filion</u>, 144 F. Supp. 2d 145, 156 (E.D.N.Y. 2000). Nonetheless, as discussed below, even were these claims not barred they are otherwise meritless.

(5)

### Holley's Right to Be Present

On September 9, 1996, during Holley's trial, with defense counsel present and Holley himself absent, the state asked the court to vacate a material witness order it had issued for an individual named Eugene Perry, who was present in the court. The state had initially wanted to call Perry to testify because he had made a statement to police in which he claimed to have seen Holley with a gun on the night of the murder. On the morning of September 9, however, Perry told the prosecutor that his statement to police was false, and that he had made it hoping that the state would treat him leniently in connection with another unrelated criminal matter. The court granted the state's request to vacate the material witness order and instructed Perry that he was free to leave, which he did without saying anything. At this time, the prosecutor also told the court and defense counsel that Perry had told her about discussions he had with

19

others who knew he was going to testify against Holley. The parties then discussed how this information became known when the witness's identities were supposed to have remained secret until just prior to jury selection. Shortly thereafter, the defendant arrived in the courtroom.

Holley claims that his absence from this proceeding entitles him to habeas relief. It does not. Holley is correct that he had a right to be present at material stages of his trial. <u>See</u> <u>United States v. Doe</u>, 964 F.2d 157, 158-159 (2d Cir. 1992). The right to be present does not extend to every proceeding in connection with a criminal trial, however – only those where "his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge," and the right does not attach when a defendant's "presence would be useless, or the benefit but a shadow." <u>Kentucky v. Stincer</u>, 482 U.S. 730, 745 (1987) (quoting <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 105-07 (1934); <u>see also</u> <u>Perkins v. Herbert</u>, 537 F. Supp. 2d 481, 499 (W.D.N.Y. 2008). In other words, violations of a defendant's right to be present are subject to harmless error review, and thus only require reversal upon a showing of prejudice. <u>See</u>, <u>e.g.</u>, <u>United States v. Jones</u>, 381 F.3d 114, 122 (2d Cir. 2004). Accordingly, in this case, whether Holley's right to be present at his trial was violated by his absence from this brief interchange between the court, the state, and defense counsel

need not be parsed because even assuming that the right was
violated, any error would have been clearly harmless.  The
purpose of the proceeding was for the prosecution to alert the
court and defense counsel that a witness, who was to testify
against Holley, was no longer going to testify.  If the
proceeding had any effect on the trial whatsoever, which is
doubtful, it was to reduce the amount of evidence proving
Holley's guilt.  Thus, Holley was not and cannot claim to have
been prejudiced, and his absence does not entitle him to habeas
relief.


## (6)

### Admission of Ballistics Evidence

At Holley's trial, the state offered testimony of officers
who responded to the scene and discovered the shell casings, the
officer who recovered the bullet from the victim, and a
ballistics expert who had tested the evidence.

Because questions on the admissibility of this sort of
evidence are matters of state law, they are not congizable on
habeas review unless any error was serious enough to constitute a
due process violation.  Estelle v. McGuire, 502 U.S. 62, 67-68
(1991).  Generally, "[t]he introduction of improper evidence
against a defendant does not amount to a violation of due process
unless the evidence 'is so extremely unfair that its admission

violates fundamental conceptions of justice.'" <u>Dunnigan v. Keane</u>,
137 F.3d 117, 125 (2d Cir. 1998) (quoting <u>Dowling v. United</u>
<u>States</u>, 493 U.S. 342, 352 (1990)).  Moreover, a due process
violation will only result when "the erroneously admitted
evidence, viewed objectively in light of the entire record before
the jury, was sufficiently material to provide the basis for
conviction or to remove a reasonable doubt that would have
existed on the record without it. In short it must have been
crucial, critical, [and] highly significant." <u>Collins v. Scully</u>,
755 F.2d 16, 19 (2d Cir. 1985) (internal quotation marks
omitted).

Holley claims that this ballistics testimony was improper
because (1) there was some inconsistency that could have
established the existence of more than one gun, and (2) the state
failed to establish an unbroken chain of custody in connection
with some of the physical evidence.  These perceived weaknesses
in the state's evidence, however, were fully ventilated by
defense counsel during Holley's trial.  Holley has failed to
establish that the state court erred, much less that its decision
resulted from an unreasonable application of clearly established
Supreme Court precedent.  On this record, it is clear that the
admission of the evidence did not deprive Holley of his due
process right to a fair trial.

## Right to Counsel at Lineup

Last, Holley seeks a writ of habeas corpus on the grounds
that he was denied what he claims was his right to counsel at his
lineup. This claim is meritless. Holley has claimed in previous
proceedings, though not in his instant habeas petition, that he
was arrested pursuant to a complaint and warrant, and thus his
lineup was conducted after he was formally charged. The weight
of the evidence, however, suggests otherwise – <u>See</u> Aff. in Opp'n
to Pet. for a Writ of Habeas Corpus ("State's Brief"), Ex. E at
8-10 (explaining the evidence establishing that this lineup was
pre-indictment) – and, moreover, the Appellate Division, in
denying Holley's 440 motion, held that the lineup at issue was
conducted prior to the initiation of formal prosecutorial
proceedings. <u>See</u> State's Brief, Ex. F ("Contra to defendant's
allegations that he was arrested pursuant to a felony complaint
and warrant, defendant was arrested on a parole violation."). In
this habeas petition, Holley has not explained why he thinks his
lineup was post-indictment and there is no basis to disagree with
the state court on this issue.

There is no federal or state right to counsel at pre-
indictment lineups. <u>Deshawn E. by Charlotte E. v. Safir</u>, 156
F.3d 340, 349 (2d Cir. 1998)(citing <u>Kirby v. Illinois</u>, 406 U.S.
682, 688-90 (1972)); <u>see also</u> <u>People v. Wilson</u>, 89 N.Y.2d 754,

759, 658 N.Y.S.2d 255, 257, 680 N.E.2d 598, 601 (1997).

Therefore, Holley's lack of counsel during his pre-indictment lineup is not grounds for habeas relief.

## Conclusion

In sum, all of Holley's claims are either procedurally barred from habeas review or meritless or both. His petition for a writ of habeas corpus is denied.


Dated: Brooklyn, New York
       July 28, 2008

                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge